**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                      )
ART DRAUGLIS,                         )
                                      )
                 Plaintiff,           )
                                      )
        v.                            )     Civil Action No. 14-1043 (ABJ)
                                      )
KAPPA MAP GROUP, LLC,                 )
                                      )
                 Defendant.           )
_____  )
```

**MEMORANDUM OPINION**

Plaintiff Art Drauglis brought this copyright action against defendant Kappa Map Group, LLC, arising out of defendant's use of a photograph taken by plaintiff as the cover art for a commercially-released Montgomery County, Maryland street atlas. Compl. [Dkt. # 1]. In Count I, plaintiff claims that defendant infringed his valid copyright in the photograph, in violation of 17 U.S.C. § 501, when it copied his work and used it on the atlas's cover without plaintiff's permission. *Id.* ¶¶ 19–24. In Count II, plaintiff alleges that defendant included false copyright management information ("CMI") for the photograph in the atlas, in violation of 17 U.S.C. § 1202(a).[1] *Id.* ¶¶ 25–28. The parties filed separate cross-motions for summary judgment on each count.

---

1      Plaintiff's complaint asserts that defendant violated 17 U.S.C. § 1202(b), which relates to the removal or alteration of CMI, rather than 17 U.S.C. § 1202(a), which addresses the falsification of CMI. Compl. ¶ 26. Plaintiff clarified in his motion for summary judgment that this was a "typographical error" and that he intended to state a claim under section 1202(a). Pl.'s Mot. for Partial Summ. J. & Mem. of P. & A. [Dkt. # 14] ("Pl.'s Count II Mot.") at 1 n.1. Defendant does not object to plaintiff's recharacterization of Count II, and it addressed its Count II cross-motion to section 1202(a), and not to section 1202(b). Def.'s Mot. for Partial Summ. J. as to Count II [Dkt. # 21]. Therefore, the Court will treat Count II as asserting a claim for falsification of CMI in violation of 17 U.S.C § 1202(a).

Plaintiff alleges that defendant infringed his copyright in the photograph because it "copied Plaintiff's work and made derivatives of the work without Plaintiff's authorization in violation of 17 U.S.C. § 501." *Id.* ¶ 22.   But plaintiff uploaded the photograph to a public photo-sharing website, where he did not assert exclusive rights to his copyrighted image, and he instead opted to license the work and make it available for use by others without compensation.   Plaintiff repeatedly voices consternation in his pleadings about defendant's distribution of the publication that displayed his work on its cover for profit, but of the many licenses available to choose from, plaintiff selected the one that specifically authorized commercial use.   So the only issue before the Court in Count I is whether defendant – which gave plaintiff full credit for the work it displayed on the cover of its publication – complied with the technical terms of the license under which plaintiff published the work.   The Court finds that it did.   As for Count II, the Court finds that the allegedly false copyright notice was not "conveyed in connection with" the photograph, which is the necessary predicate for a successful section 1202 claim.   Thus, the Court will grant defendant's motions for summary judgment on both counts.

## BACKGROUND

### I.   Factual Background

On April 27, 2008, plaintiff took a photograph entitled "Swain's Lock."   Def.'s Statement of Undisputed Material Facts in Supp. of Its Mot. for Partial Summ. J. [Dkt. # 17-2] ("Def.'s SOF") ¶ 4; Pl.'s Concise Statement of Undisputed Facts in Supp. of Mot. for Partial Summ. J. on Count I of the Compl. [Dkt. # 20-1] ("Pl.'s SOF") ¶ 3; *see also* Ex. A to Decl. of Karen Taragowski in Supp. of Pl.'s Mot. for Partial Summ J. [Dkt. # 16-1] (the "Photograph").   Plaintiff then posted the

Photograph publicly to the Flickr[2] page he shares with his wife.  Def.'s SOF ¶ 5; Pl.'s SOF ¶ 5.

When plaintiff posted the Photograph on Flickr, he indicated that it was protected by copyright,

but that it was licensed pursuant to the Creative Commons Attribution-ShareAlike 2.0 license ("the

CC BY-SA 2.0 license").[3]  Def.'s SOF ¶ 6, Pl.'s SOF ¶ 6.  On June 9, 2014, plaintiff registered

the Photograph with the Register of Copyrights.  Ex. 1 to Notice of Filing Certificate of Copyright

Registration [Dkt. # 10-1].

Defendant is a Pennsylvania-based publisher of maps and atlases.  Def.'s SOF ¶¶ 2–3; Pl.'s

SOF ¶ 1.  At some point after plaintiff uploaded the Photograph to Flickr, defendant downloaded

a copy of the Photograph from plaintiff's Flickr account, and in July 2012, it began publishing and

selling a local atlas, entitled the "Montgomery Co., Maryland Street Atlas," with the Photograph

on the cover under the title banner. Def.'s SOF ¶¶ 7, 15–16; Pl.'s SOF ¶ 7.  The way in which

defendant used the Photograph and how it provided plaintiff with attribution for the Photograph in

the atlas are the focus of this lawsuit.  So, on June 26, 2015, the Court ordered defendant to provide

the Court with a copy of the atlas for its review.  Minute Order (June 26, 2015).  Defendant

complied, and a copy of the atlas has been made part of the record in this case.  Notice [Dkt. # 37]

(the "Atlas").

---

2      Flickr is an "online photo management and sharing application."  *About Flickr*, Flickr, http://www.flickr.com/about (last visited Aug. 18, 2015).

3      "Creative Commons is a nonprofit organization that enables the sharing and use of creativity and knowledge through free legal tools."  *About*, Creative Commons, http://www.creativecommons.org/about (last visited Aug. 18, 2015).  It offers "free, easy-to-use copyright licenses" in order to "provide a simple, standardized way to give the public permission to share and use . . . creative work – on conditions of [the creator's] choice."  *Id.*  The Creative Commons Attribution-ShareAlike license is one of several types of licenses offered by Creative Commons.  *See About the Licenses*, Creative Commons, http://www.creativecommons.org/ licenses (last visited Aug. 18, 2015).  The provisions of the CC BY-SA 2.0 license are discussed in greater detail below.

The top half of the front cover of the Atlas is comprised of the title banner, a list of the regions within the county covered by the Atlas, and a list of features shown on the maps.  Atlas at 1.[4]  The bottom half of the front cover consists exclusively of a color reproduction of the Photograph, with no text or pictures obscuring it.  *Id.*  Nothing on the front cover identifies who took the Photograph, but the following text appears at the bottom of the back cover of the Atlas:

> Photo:  Swain's Lock, Montgomery Co., MD
> Photographer:  Carly Lesser & Art Drauglis, Creative Commoms [sic], CC-BY-SA-2.0

*Id.* at 116.  The top half of the back cover consists of the same blue and black logo and title banner that appears on the front, and the bottom half includes advertisements for other products sold by defendant and its affiliates, along with the photo credit set forth above.  *Id.*

The inside front cover of the Atlas consists of a legend and an index of key places in the county.  *Id.* at 2.  The first page of the Atlas itself contains its table of contents, and that page also bears a copyright notice, which states:

> Copyright © Kappa Map Group, LLC 2012.  Portions © Navteq 2011.[5]
> All Rights Reserved.  Reproduction, in whole or in part, by any means whatsoever, is expressly prohibited without permission from the publisher.

*Id.* at 3.  Pages 2 through 81 of the Atlas are all maps, and each individual page displays the following copyright notice at the bottom:  "© Kappa Map Group, LLC."  *Id.* at 4–83.  Pages 82 through 111 comprise the index, the final page – 112 – is left blank for notes, and the inside of the back cover is an advertisement for other Kappa Map travel products.  *Id.* at 84–115.

---

4       Page numbers used in citations to the Atlas refer to the ECF-generated numbers found at the top of each page of the Atlas made part of the record.  *See* Atlas.

5       Navteq is defendant's map data provider.  Pl.'s Count II Mot. at 2.

## II.      Procedural History

Plaintiff filed the two-count complaint in this case on June 19, 2014, seeking declaratory and injunctive relief, damages, fees, and costs.  Compl. at 5 ¶¶ a–f.  Defendant answered and asserted three counterclaims against plaintiff, seeking a declaratory judgment of non-infringement of copyright and a declaratory judgment of non-falsification of CMI, as well as attorneys' fees and costs.  Answer & Countercls. [Dkt. # 6] at 9–12.

Following discovery, defendant moved for summary judgment on Count I, plaintiff's copyright infringement claim, and plaintiff filed a cross-motion seeking judgment in his favor on the same count.  Def.'s Mot. for Partial Summ. J. [Dkt. # 17] ("Def.'s Count I Mot."); Pl.'s Mot. for Partial Summ. J. on Count I & Mem. of P. & A. [Dkt. # 20] ("Pl.'s Count I Mot.").  Meanwhile, it was plaintiff who moved for summary judgment on Count II, the falsification of CMI claim, and defendant filed a cross-motion.  Pl.'s Mot. for Partial Summ. J. & Mem. of P. & A. [Dkt. # 14] ("Pl.'s Count II Mot."); Def.'s Mot. for Partial Summ. J. as to Count II [Dkt. # 21].  On July 10, 2015, the Court heard oral argument on both counts.  Minute Entry (July 10, 2015).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine

issue for trial." *Id.* at 324 (internal quotation marks omitted).  The existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion."  *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982), *abrogated on other grounds by Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1125–26 (D.C. Cir. 1999).  In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party."  *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

**I.   Defendant is entitled to summary judgment on Count I because its use of the Photograph in the Atlas did not exceed the scope of the CC BY-SA 2.0 license.**

In Count I, plaintiff asserts a claim for copyright infringement pursuant to 17 U.S.C. § 501. Compl. ¶¶ 20–22.  "A plaintiff seeking to establish copyright infringement must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *MOB Music Publ'g v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197, 201–02 (D.D.C. 2010), quoting *Stenograph LLC v. Bossard Assocs., Inc.*, 144 F.3d 96, 99 (D.C. Cir. 1998). The parties do not dispute that plaintiff is the holder of a valid copyright for the Photograph.  *See* Def.'s SOF ¶ 6; Pl.'s SOF ¶ 4.  And defendant admits that it downloaded the Photograph from plaintiff's Flickr page and published and sold the Atlas with a copy of the Photograph on the cover.

Def.'s SOF ¶¶ 15–16.  So plaintiff has made out a prima facie case of copyright infringement, but that is not where the dispute in this case lies.

"[A] 'copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement' and can sue only for breach of contract."  *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008), first quoting *Sun Microsys., Inc., v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999), *abrogated on other grounds by Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979–80 (9th Cir. 2011), and then citing *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); *see also Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003) ("[T]he existence of an implied license is an affirmative defense to infringement.").  Only where "a license is limited in scope and the licensee acts outside the scope" can "the licensor . . . bring an action for copyright infringement."  *Jacobsen*, 535 F.3d at 1380, first citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989), and then citing Nimmer on Copyright, § 1015[A] (1999); *see also S.O.S., Inc.*, 886 F.2d at 1087 ("A licensee infringes the owner's copyright if its use exceeds the scope of its license."), citing *Gilliam v. Am. Broad. Cos.*, 538 F.2d 14, 20 (2d Cir. 1976).

Plaintiff does not dispute that he published the Photograph pursuant to the CC BY-SA 2.0 license.  Pl.'s SOF ¶ 6.  And his counsel agreed with the Court's statement that this particular license "specifically authorizes commercial use."  Tr. of Mots. Hr'g (July 10, 2015) ("Hr'g Tr.") 65:21–66:2; *see also About the Licenses*, Creative Commons, http://creativecommons.org/ licenses/ (last visited Aug. 18, 2015) (describing the "CC BY-SA" license as one which "lets others remix, tweak, and build upon [an author's] work even for commercial purposes").  So the only issue to be determined is whether defendant's use of the Photograph in the Atlas "was outside the scope of the License."  *See Jacobsen*, 535 F.3d at 1379.  While defendant would ordinarily bear

the burden of proving the existence of a valid license, *see, e.g.*, *Atkins*, 331 F.3d at 992, plaintiff has admitted the existence of a license, and so the burden shifts back to plaintiff to show that defendant's use of the Photograph exceeded the license's scope.  *See S.O.S., Inc.*, 886 F.2d at 1085.

Answering that question requires consideration of the text of the CC BY-SA 2.0 license, a copy of which was attached as an exhibit to defendant's answer and counterclaims.  Ex. A to Answer & Countercls. [Dkt. # 6-1] (the "License").  Although the interpretation of a Creative Commons license is an issue of first impression in this Circuit, as a general matter, "[a] license is governed by the laws of contract." *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1107 (Fed. Cir. 2001), citing *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995).  Thus, in determining the terms and scope of the License, the Court may properly rely on traditional tools of contract interpretation, provided that those canons do not interfere with federal copyright law.  *See, e.g.*, *S.O.S., Inc.*, 886 F.2d at 1088 (relying "on state law to provide the canons of contractual construction" in interpreting nonexclusive computer software licensing agreement in copyright infringement action).

Under traditional rules of contract interpretation, "the plain and unambiguous meaning of a written agreement is controlling, in the absence of some clear evidence indicating a contrary intention." *Vogel v. Tenneco Oil Co.*, 465 F.2d 563, 565 (D.C. Cir. 1972).  Thus, "[e]xtrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous." *Interstate Fire & Cas. Co. v. Wash. Hosp. Ctr. Corp.*, 758 F.3d 378, 383 (D.C. Cir. 2014), quoting *Sears v. Catholic Archdiocese of Wash.*, 5 A.3d 653, 661 n.15 (D.C. 2010).  "In determining whether a contract is ambiguous, we examine the document on its face, giving the language used its plain meaning, unless, in context, it is evident that the terms used have a technical or specialized meaning." *Id.*, quoting *Beck v. Cont'l Cas. Co.*, 936 A.2d 747, 751 (D.C. 2007).  "[A] contract

provision 'is not ambiguous merely because the parties later disagree on its meaning.'   It is ambiguous only 'if it is reasonably susceptible of different constructions.'" *Segar v. Mukasey*, 508 F.3d 16, 22 (D.C. Cir. 2007), quoting *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 497 (D.C. Cir. 1995).

In his cross-motion for summary judgment on Count I, plaintiff alleges that defendant exceeded the scope of the License in three ways.   He claims that:   1) defendant violated the requirement in section 4(b) of the License that it distribute the Atlas for free pursuant to a similar type of license ("the ShareAlike requirement"); 2) defendant did not provide adequate information about the License in the Atlas, as required by section 4(a) of the License; and 3) defendant failed to give plaintiff proper attribution for the Photograph in the Atlas, as required by section 4(c) of the License.   Pl.'s Count I Mot. at 4–10.   The Court finds that Count I can be resolved as a matter of law based on the plain meaning of the License terms in question, *see* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and that defendant complied with the terms of the License.   Therefore, defendant is entitled to summary judgment on Count I.[6]

---

[6]   In support of his Count I motion for summary judgment, plaintiff relies almost exclusively on the declaration of Aurelia Schultz, a former member of the Creative Commons in-house legal team.   *See* Pl.'s Count I Mot. at 3–7; *see also* Decl. of Aurelia Schultz in Opp. to Def.'s Count I Mot. [Dkt. # 20-2] ("Schultz Decl.").   At the hearing, plaintiff's counsel explained that he offered Schultz as an expert on Creative Commons licenses because her "specialized knowledge and experience dealing with these licenses" could be "appropriate and useful."   Hr'g Tr. 77:16–18. Plaintiff's counsel acknowledged that it would not be appropriate for the expert to opine on questions of law, *id.* 11:5–10, and he conceded that the Court could "accept or reject" Schultz's views if it found that the License was clear on its face.   *Id.* 78:20–21.   Defendant moved to strike the Schultz declaration, Def.'s Mot. to Exclude or Strike the Schultz Decl. Pursuant to Fed. R. Civ. P. 37(c) [Dkt. # 24], but because the Court finds that it can resolve plaintiff's particular contract claims without the need for extrinsic evidence, it does not need to consider Schultz's declaration in resolving the cross-motions for summary judgment on Count I.   *Interstate Fire*, 758 F.3d at 383. So it need not address whether the Schultz declaration was filed in accordance with the Rules of Evidence, the Federal Rules of Civil Procedure, or the local rules of this Court, and defendant's motion to strike the Schultz declaration will be denied as moot.

### A. Defendant did not violate the ShareAlike requirement because the Atlas is not a derivative work to which that requirement applies.

Plaintiff first asserts that defendant's use of the Photograph exceeded the scope of the License because defendant did not publish the Atlas under a license with the same or similar terms as those under which the Photograph was originally licensed. Pl.'s Count I Mot. at 6–8, 10. In other words, plaintiff argues that defendant should have offered the entire Atlas for free, just as plaintiff provided the Photograph for free on Flickr, under the same Creative Commons ShareAlike license or one that is similar to it. *See e.g.*, *id.* at 6 ("It is undisputed that Kappa sells the map at issue and has never made the map at issue available for free under a CC BY-SA license. Therefore, Kappa violated the derivative works requirement of the license."); *see also* Pl.'s Reply Mem. of P. & A. in Supp. of Pl.'s Count I Mot. [Dkt. # 28] ("Pl.'s Count I Reply") at 7 ("Kappa did not offer the map available for free as required by the CC BY-SA 2.0 license.").

But plaintiff's contention that defendant violated the ShareAlike requirement is contingent upon a finding that defendant created a "derivative work" when it incorporated the Photograph into the Atlas. Because the Atlas is not a derivative work based upon the Photograph, the ShareAlike requirement does not apply, and so this argument in support of plaintiff's Count I cross-motion for summary judgment fails.

### 1. The ShareAlike requirement applies only to derivative works.

The License defines several key terms that are relevant in determining whether the ShareAlike requirement at issue applies to the Atlas. A "Work" is "the copyrightable work of authorship offered under the terms of this License." License § 1(e). In this case, the "Work" offered under the License is the Photograph.

When a licensee creates something using a Work offered under the License, the new creation is classified as either a "collective work" or a "derivative work."  *See id.* §§ 1(a)–(b).  A "collective work" is defined as:

> a work, such as a periodical issue, anthology or encyclopedia, in which the Work *in its entirety in unmodified form*, along with a number of other contributions, constituting separate and independent works in themselves, are assembled into a collective whole.

*Id.* § 1(a) (emphasis added).  By contrast, a "derivative work" is:

> *a work based upon the Work* or upon the Work and other pre-existing works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form *in which the Work may be recast, transformed, or adapted* . . . .

*Id.* § 1(b) (emphasis added).  A work using another copyrightable item must either be one or the other:  under the terms of the License, a work that constitutes a collective work cannot be considered to be a derivative work and vice versa, *id.* §§ 1(a)–(b), and the License provides no other categories into which a published work might fall.

Section 4(b) of the License sets forth the ShareAlike requirement, which requires that a user of a licensed work "distribute [or] publicly display" a derivative work "only under the terms of this License, a later version of this License with the same License Elements as this License, or a Creative iCommons license that contains the same License Elements as this License."  License § 4(b).  As plaintiff's counsel acknowledged during the hearing, the ShareAlike requirement applies only to derivative works, and it does not govern the distribution, display, or performance of collective works.  Hr'g Tr. 47:12–19; *see also* License § 4(b).  So the classification of the Atlas in this case determines the applicability of this provision.

### 2.   The Atlas is not a derivative work to which the ShareAlike requirement applies.

Plaintiff contends that the Atlas, "or at least the cover, is a derivative work."  Pl.'s SOF ¶ 19; *see also* Pl.'s Count I Mot. at 8 ("The Kappa Map cover, and quite possibly the Map book as a whole, is a derivative work.").  But the Atlas is a *map book* and not an adaptation of plaintiff's photograph.  Because this 112-page book of maps is not in any way "based upon" the Photograph, and because defendant did not "recast, transform[], or adapt[]" the Photograph when it used it as the cover art for the Atlas, *see* License § 1(b), the Court finds that neither the Atlas nor its cover constitutes a derivative work subject to the ShareAlike requirement.  Rather, the Atlas is more akin to a collective work, because the Photograph was placed "in its entirety in unmodified form" alongside "other contributions, constituting separate and independent works" – that is, the maps. *See id.* § 1(a).

Plaintiff contends that the entire Atlas must be a derivative work and not a collective work because "[i]t is not a periodical issue, anthology or encyclopedia."  Pl.'s Count I Mot. at 8.  Here, plaintiff is referring to the examples of collective works listed in section 1(a) of the License. License § 1(a) ("'Collective Work' means a work, such as a periodical issue, anthology or encyclopedia . . . .").  But "[a]s the use of the term 'such as' confirms, the list is illustrative, not exhaustive."  *Bragdon v. Abbott*, 524 U.S. 624, 639 (1998).  So the fact that the Atlas is not a periodical, anthology, or encyclopedia is not dispositive of this issue.

Plaintiff also argues that "[t]he Map is not an assemblage of independent works into a collective whole," Pl.'s Count I Mot. at 8, but that is precisely what it is.  It is a set of "separate and independent," individually-copyrighted maps, "assembled into a collective whole," with the Photograph "in its entirety in unmodified form" on the cover.  *See* License § 1(a).  Therefore, the

Court finds that the Atlas as a whole is a collective work which is not subject to the ShareAlike requirement.

Plaintiff advances the alternative position that the cover of the Atlas is a derivative work if the entire Atlas is not.  He states in his reply that "[t]here is no dispute that [defendant] 'cropped' the photograph for the front cover" of the Atlas, and that this removal of some of the "original material" of the Photograph "creates a derivative work as a matter of law."  Pl.'s Count I Reply at 8.

But this was not alleged in the complaint or in plaintiff's motion for summary judgment, and the Court questions whether it may consider plaintiff's cropping argument, since it was raised for the first time in his reply.  *See, e.g.*, *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992) ("This Court, of course, generally refuses to entertain arguments raised for the first time in an appellant's reply brief."); *Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008) ("[I]t is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief.").  But even if the point was timely raised, plaintiff provides no support for his claim that the Photograph was cropped when it was incorporated into the Atlas, and defendant has not had the opportunity to contest that assertion.  So plaintiff has failed to show that he is entitled to summary judgment on this ground alone.  Fed. R. Civ. P. 56(c); *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) ("Summary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements.").

In any event, even if plaintiff had properly raised and supported this claim, when one compares the Atlas cover with the original Photograph, it is clear that the entire picture is reproduced with no major deletions or alterations.  *Compare* Atlas [Dkt. # 37] at 1, *with*

Photograph [Dkt. # 16-1].  Any discernible cropping appears to be "so minor and insubstantial that as a matter of law it falls within that degree of latitude afforded licensees to alter a copyrighted work to suit their style or the medium in which the work is presented."  *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 232 (S.D.N.Y. 2000); *see also Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1174 (9th Cir. 2012) (finding that "neither minor cropping nor the inclusion of headlines or captions transformed the copyrighted works" where "[e]ach of the individual images was reproduced essentially in its entirety" in celebrity gossip magazine); License § 3 (listing the rights of licensees and stating that "[t]he above rights include the right to make such modifications [to a work] as are technically necessary to exercise the rights in other media and formats").

For these reasons, the Court finds that defendant did not create a derivative work when it incorporated the Photograph into the cover of the Atlas, and that therefore, the ShareAlike requirement does not apply to the Atlas.  So defendant is entitled to summary judgment on this aspect of plaintiff's copyright infringement claim.

> **B.     Defendant included the proper Uniform Resource Identifier for the License in the Atlas.**

Plaintiff also contends that defendant violated the terms of the License because the Atlas "does not include a copy of the license text or a link to the full license as required by Section 4(a)" of the License.  Pl.'s Count I Mot. at 6.  But section 4(a) does not state that a licensee must display either the text of the License or a "link" to the License; it states that a licensee "must include a copy of, or the *Uniform Resource Identifier* for, this License with every copy . . . of the Work" it distributes or displays.  License § 4(a) (emphasis added).

While there is no legal authority on this point, Internet authorities have defined a Uniform Resource Identifier ("URI") as "an identifier consisting of a sequence of characters . . . . [which] enables uniform identification of resources via a separately defined extensible set of naming

schemes." T. Berners-Lee,[7] *et al.*, *Uniform Resource Identifier: Generic Syntax* 5 (Jan. 2005), Network Working Grp., https://tools.ietf.org/html/std66 (last visited Aug. 18, 2015). There is more than one form of URI – it can be "a locator, a name, or both." *Id.* at 7.

A Uniform Resource Name ("URN") "functions like a person's name," while a Uniform Resource Locator ("URL") "resembles that person's street address." *Uniform Resource Identifier*, Wikipedia, https://en.wikipedia.org/wiki/Uniform_resource_identifier (last visited Aug. 18, 2015).[8] "In other words: the URN defines an item's identity, while the URL provides a method for finding it." *Id.* Thus, as plaintiff's counsel acknowledged, the term URI – the one used in the License – is broader than the term URL, which was not, Hr'g Tr. 22:20–23:13, and these are terms of art with distinct meanings. *See, e.g.*, *BEA Sys., Inc. v. Web Balance, Inc.*, No. CIV.A. 03-11755-RWZ, 2006 WL 897139, at *2 (D. Mass. Mar. 31, 2006) ("URI abbreviates Uniform Resource Identifier and relates to another technical term, URL, that stands for Uniform Resource Locator.").

Thus, when plaintiff argues that defendant should have provided "a link to the full license" in the Atlas, he conflates the term Uniform Resource Identifier, which is used in section 4(a), with the narrower term Uniform Resource Locator, which appears nowhere in the License. A Uniform Resource Locator – "URL" or "link" – is one form of a Uniform Resource Identifier, but it is not the only one. For that reason, plaintiff's contention that defendant was required to include in the Atlas a "link" to the License – its Uniform Resource *Locator* – is simply incorrect. Section 4(a)

---

[7]     The D.C. Circuit has favorably cited to the FCC's statement that Sir Tim Berners-Lee was responsible for "the invention of the World Wide Web." *Verizon v. FCC*, 740 F.3d 623, 645 (D.C. Cir. 2014).

[8]     Where dictionaries or other traditional sources do not define or describe a relevant term, other courts in this District have relied on Wikipedia for background information. *See, e.g.*, *Cole v. Boeing Co.*, No. 11-1494 (RMC), 2014 WL 5795124, at *1 n.4 (D.D.C. Nov. 7, 2014); *Kaufman v. Holder*, 686 F. Supp. 2d 40, 41 n.1 (D.D.C. 2010).

states only that a licensee "must include . . . the Uniform Resource *Identifier*" for the License when distributing a work offered under the License.  *See* License § 4(a) (emphasis added).

To satisfy section 4(a), then, defendant could have printed the Atlas with either the License's URL or its URN, as both are subclasses of the URI required by the License.  And while defendant did not print the Atlas with a link to the License's web address (its URL), it did provide the License's URN when included the notation "Creative Commoms [sic], CC-BY-SA 2.0" on the back cover of the Atlas.  Atlas at 116.  Creative Commons has unique names for each of its six licenses, and the particular type of license at issue in this case is specifically designated and easily located online by the phrase "CC BY-SA 2.0."  *See About the Licenses*, Creative Commons, http://creativecommons.org/licenses/ (last visited Aug. 18, 2015) (abbreviating the "Attribution-ShareAlike" license as "CC BY-SA"); *Attribution-ShareAlike 2.0 Generic*, Creative Commons, https://creativecommons.org/licenses/by-sa/2.0/ (last visited Aug. 18, 2015) (referring to the License as the "Attribution-ShareAlike 2.0 Generic (CC BY-SA 2.0)" license).  That "CC BY-SA 2.0" is the proper URN for the License is further confirmed by a routine Internet search.[9]

Therefore, the Court finds that defendant's reference to the name of the License on the back cover of the Atlas was sufficient to satisfy the section 4(a) notice requirement, and defendant is entitled to summary judgment on this issue.

---

9       As of the date of this memorandum opinion, when one utilized either Google, Yahoo, or Bing to search for the phrase "CC BY-SA 2.0," the first result in each instance was the Creative Commons summary page for the License:  http://creativecommons.org/licenses/by-sa/2.0/.  *See* Google Result, https://www.google.com/#q=cc+by-sa+2.0 (last visited Aug. 18, 2015); Yahoo Result, https://search.yahoo.com/search;_ylt=Aq1o9NOPwsqc4AW_lKFlB_ybvZx4?p=cc+by-sa+2.0&toggle=1&cop=mss&ei=UTF-8&fr=yfp-t-250&fp=1 (last visited Aug. 18, 2015); Bing Result, http://www.bing.com/search?q=cc%20by-sa%202.0&qs=n&form=QBRE&pq=cc%20by-sa%202.0&sc=2-12&sp=-1&sk=&cvid=958a505933cf43ca973167e157c1bbad (last visited Aug. 18, 2015).

**C.        Defendant provided plaintiff with proper attribution for the Photograph.**

Finally, plaintiff contends that defendant violated section 4(c) of the License because it failed to accord plaintiff proper attribution for the Photograph.  Pl.'s Count I Mot. at 5; Pl.'s Count I Reply at 4–5.

Section 4(c) sets forth the attribution requirements for a licensee's use of a work within a collective or derivative work:

> If you distribute, publicly display, publicly perform, or publicly digitally perform the Work or any Derivative Works or Collective Works, You must . . . give the Original Author credit reasonable to the medium or means You are utilizing by conveying the name (or pseudonym if applicable) of the Original Author if supplied; the title of the Work if supplied; [and] to the extent reasonably practicable, the Uniform Resource Identifier, if any, that Licensor specifies to be associated with the Work . . . . Such credit may be implemented in any reasonable manner; provided, however, that in the case of a Derivative Work or Collective Work, at a minimum such credit will appear where any other comparable authorship credit appears and in a manner at least as prominent as such other comparable authorship credit.

License § 4(c).

Plaintiff admits that "attribution is given by Kappa in 7–8 point type on the bottom of the back of the map book," where the Atlas states:  "Photo:  Swain's Lock, Montgomery Co., MD" and "Photographer:  Carly Lesser & Art Drauglis."  Pl.'s Count I Mot. at 5; *see also* Atlas at 116. And while he complains that defendant's "other copyright notices and attribution credits are prominently given in at least 10 point type on the first page of the map book," Pl.'s Count I Mot. at 5, counsel confirmed at the hearing that he was not arguing that the attribution on the back cover was "unreasonable for the medium and the means" and that he was instead "just resting on the lack of comparable prominence."[10]   Hr'g Tr. 16:25–17:7.  So, plaintiff's section 4(c) attribution

---

[10]    Plaintiff's counsel further took the position that the Court could decide the attribution issue – the question of "whether it's comparable or not, or as prominent as something comparable" – as a matter of law.  Hr'g Tr. 17:18–18:2.  Defendant agreed.  *Id.* 18:3–9.

challenge rests exclusively on the argument that defendant failed to provide plaintiff with credit "where any other comparable authorship credit appears and in a manner at least as prominent as such other comparable authorship credit."  Pl.'s Count I Mot. at 5, quoting License § 4(c); *see also* Hr'g Tr. 15:20–16:24.

Plaintiff posits that the only comparable authorship credit in the Atlas is the copyright notice for the entire 112-page map book on the first page, *see* Atlas at 3, and that defendant should have provided plaintiff with attribution in a comparable manner and location.  *See* Pl.'s Count I Reply at 5 (stating that "[a]ttribution to Kappa and to Navteq appear on . . . the first page" and that defendant therefore failed to comply with the License requirement "as to location of the attribution").

But the Court finds that the copyright notice on the first page is not the relevant authorship credit to which the attribution on the back cover should be compared.  Instead, the notation at the bottom of each individual map – "© Kappa Map Group, LLC" – is the comparable authorship credit, because the single Photograph is more similar to an individual map than it is to the Atlas as a whole.  This determination is supported by the text of the Copyright Act, which groups both "photographs" and "maps" into the broader category of "pictorial, graphic, and sculptural works." 17 U.S.C. § 101.  The Act separately defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  *Id.*  The Court finds that the Photograph is more akin to each of the individual maps contained with the Atlas than to the Atlas itself:  the maps are discrete, stand-alone pictorial or graphic works, whereas the Atlas is a compilation of many elements, arranged in a specific and proprietary fashion, and constituting a separate and original work.

Therefore, because defendant provided plaintiff with authorship credit in a manner comparable to and as prominent as the attributions on each of the individual maps when it attributed the Photograph to plaintiff on the back cover, the Court finds that defendant did not violate section 4(c). Thus, plaintiff's cross-motion for summary judgment on Count I will be denied, and defendant's Count I motion for summary judgment will be granted.

## II. Defendant is entitled to summary judgment on Count II because defendant did not "convey" false copyright management information "in connection with" the Photograph.

In Count II, plaintiff alleges that defendant "knowingly, and with the intent to enable, conceal or facilitate copyright infringement, provided false copyright management information," because the copyright notice on the first page of the Atlas incorrectly implied that defendant owned the copyright to the Photograph. Compl. ¶ 26; Pl.'s Count II Mot. at 2.

Under the Digital Millennium Copyright Act ("DMCA"), it is unlawful to "knowingly and with the intent to induce, enable, facilitate, or conceal infringement – (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). "[T]he term 'copyright management information' means any of the following information *conveyed in connection with* copies" of a work: the title and identifying information of a work, "including the information set forth on a notice of copyright," the name and identifying information of the author and copyright owner, and the terms and conditions for the use of a work. *Id.* § 1202(c) (emphasis added).[11] Because the

---

11      In his motion, plaintiff ignores the section 1202(c) requirement that information must be conveyed with a work to constitute CMI, and he instead repeatedly quotes from and cites to the provisions set forth in 17 U.S.C. § 401 relating to copyright notices. Pl.'s Count II Mot. at 2, 7–9. Plaintiff's reliance is misplaced. While the notice on the inside cover may qualify as a copyright notice under 17 U.S.C. § 401, that does not mean it automatically constitutes CMI as defined in section 1202. And because 17 U.S.C. § 1202(a) is the statute under which Count II was brought, its definition controls the outcome of plaintiff's claim for falsification of CMI.

copyright notice to which plaintiff objects was not "conveyed in connection with" the Photograph, the Court finds that it does not constitute copyright management information with regard to the Photograph, and plaintiff's claim for falsification of CMI therefore fails.[12]

Several courts have interpreted the definition of CMI in section 1202(c), which states that information must be "conveyed in connection with" copies of the work in question to qualify as CMI. Generally, to satisfy that requirement, a copyright notice must be "close to" the work. *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 929 (N.D. Ill. 2013); *see also Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) (finding that the plaintiff's name constituted CMI with regard to a copyrighted image where the "name appeared in a printed gutter credit near the Image"); *Schiffer Publ'g, Ltd., v. Chronicle Books, LLC*, No. Civ.A. 03-4962, 2004 WL 2583817, at *14 (E.D. Pa. Nov. 12, 2004) (holding that "to be actionable under § 1202(b), a defendant must remove copyright management information from the 'body' of, or area around, plaintiff's work itself"). Thus, for example, "as a matter of law, if a general copyright notice appears on an entirely different webpage than the work at issue, then that CMI is not 'conveyed' with the work and no claim will lie under the DMCA." *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *7 (N.D. Ill. Feb. 8, 2012). This requirement "prevents a 'gotcha' system where a picture or piece of text has no CMI near it but the plaintiff relies on a general copyright notice buried elsewhere" in a work to establish its section 1202(a) claim. *Id.*

---

12     At the hearing, plaintiff's counsel attempted to argue that "the question of whether the copyright notice on the inside of the map applies to the photo" is "a jury question." Hr'g Tr. 70:7–9; *see also id.* 69:23–71:25. But it was plaintiff who first moved for summary judgment on Count II on the basis that the copyright notice on the inside of the Atlas constituted false CMI as a matter of law. *See* Pl.'s Count II Mot. The Court finds that there is no genuine issue of material fact in dispute regarding whether the copyright notice was "conveyed" with the Photograph, and it may properly resolve Count II at the summary judgment stage.

This will not be the first District Court to determine that the copyright notice on the first inside page of a street atlas was not "conveyed in connection with" the cover photograph and that it therefore cannot form a valid basis for a section 1202(a) claim.  In a nearly identical case involving another photographer's claim that the same defendant improperly used his photograph on the cover of a different atlas, a court in the Northern District of Georgia determined that the copyright information on the inside of the map book did not constitute CMI with regard to the photograph on its front cover because it was not conveyed with the photograph:

> The only CMI alleged as false is the copyright notice inside the map.  That copyright notice is not on or next to the image.  There is, in fact, no indication whatsoever that the copyright notice refers to the image.  This Court finds, therefore, that the copyright notice relates to the entire map, not the specific image.  The notice was not conveyed with the image and cannot be the basis for a claim for falsification of CMI under § 1202(a).

*Watson v. Kappa Map Grp., LLC*, No. 1:14-CV-100-TWT, 2015 WL 3932425, at *2 (N.D. Ga. June 25, 2015).

The facts here dictate the same result.  The copyright information to which plaintiff objects was on the inside of the Atlas; the Photograph is on the outside.  The information was not in the body of, or the area around, the Photograph, and so it was not "conveyed in connection with" the Photograph in a way that makes that information CMI.  The Court finds that plaintiff has failed to show that the copyright notice to which plaintiff objects constituted actionable CMI as defined in section 1202(c), and it therefore need not reach plaintiff's allegations that defendant knew its notice was false or that it intended to provide false information in order to enable copyright infringement.  Plaintiff's motion for summary judgment on Count II will be denied, and defendant's cross-motion will be granted.

III.    **Defendant is not entitled to attorneys' fees.**

In its answer to the complaint, defendant asserted a counterclaim against plaintiff for attorneys' fees and costs, on the ground that Count II was "without any basis in fact or law," "frivolous and objectively unreasonable," and "baseless."  Answer & Countercls. at 12.  Under the DMCA, the Court "in its discretion may award reasonable attorney's fees to the prevailing party."  17 U.S.C. § 1203(b)(5).  Interpreting similar language elsewhere in the Copyright Act, the Supreme Court directed courts to consider the following factors in determining whether to award attorneys' fees:  "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994), quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986).

The Court finds in its discretion that the first three factors do not support an award in the present case, which was filed before the *Watson* opinion was issued.  Furthermore, the Court does not find that considerations of deterrence weigh in favor of awarding defendant attorneys' fees.  Accordingly, defendant's counterclaim for fees and costs will be denied.

## CONCLUSION

Because the Court finds that defendant did not violate the terms or exceed the scope of the License under which plaintiff published the Photograph, it will grant defendant's motion for summary judgment on Count I.  And because the copyright notice on the first page of the Atlas was not "conveyed in connection with" the Photograph on the front cover, it will also grant defendant's cross-motion for summary judgment on Count II.  Since the case could be resolved based on the plain language of the License, the Court did not refer to or rely on the extrinsic evidence contained in the declaration of Aurelia Schultz in ruling on the cross-motions for

summary judgment, and so defendant's motion to strike the Schultz declaration will be denied as moot.  Finally, because the Court does not find that the relevant factors weigh in favor of awarding defendant attorneys' fees and costs, defendant's third counterclaim will be denied.

A separate order will issue.

Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE:  August 18, 2015